## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE | Case No. 22-00104-NGH |
| SHELLE NELLA ALLEN, | |
| Debtor. | |

## MEMORANDUM OF DECISION

Before the Court is an Application for Allowance of Compensation of Special Counsel, Doc. No. 101 (the "Fee Application"), filed on behalf of Seth Diviney of Idaho Injury Law Group, PLLC ("Special Counsel"). Special Counsel seeks $373,598.79 in total compensation consisting of $366,000 in attorney fees, calculated based on 40% of a $915,000 settlement of a personal injury claim (the "Claim"), as well as $7,598.79 in expenses. Shelle Nella Allen ("Debtor") filed objections to the Fee Application seeking to reduce Special Counsel's compensation. Having considered the record before it, this decision constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014.[1]

**FACTUAL AND PROCEDURAL HISTORY**

A party in interest's objection to an estate professional's compensation is a contested matter under Rule 9014, which ordinarily requires live testimony on disputed

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

material facts, just as in an adversary proceeding. *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 44 (9th Cir. BAP 2012). At a May 4, 2026, hearing, however, the parties waived an evidentiary hearing and agreed to have the Court decide the matter on the written submissions, including the parties' declarations and attached exhibits. The following factual and procedural history is derived from the parties' submissions, as well as the Court's own docket and records, which it takes judicial notice of pursuant to Fed. R. Evid. 201.

### A.   The Bankruptcy Filing

On March 21, 2022, Debtor filed a voluntary, chapter 7 bankruptcy petition commencing the above captioned case. Doc. No. 1. Debtor did not disclose the Claim on her Schedule A/B, even though Question 33 of that schedule asked Debtor to list any claims against third parties, including claims where no lawsuit had been filed or payment demand sent. *Id.* at 19. Debtor also did not list the Claim as exempt on her Schedule C. *Id.* at 22.

### B.   Hiring Special Counsel

Despite the lack of disclosure in Debtor's schedules, the chapter 7 trustee, Patrick Geile ("Trustee"), learned of the Claim, and on May 18, 2022, Trustee filed an application to employ Special Counsel to pursue the Claim. Doc. No. 17 (the "Employment Application"). The Employment Application invoked §§ 327 and 328, sought to employ Special Counsel on a contingency fee basis, and disclosed that Special Counsel was disinterested as that term is defined in § 101(14). It also disclosed that Special Counsel had represented Debtor regarding the Claim prior to the bankruptcy

MEMORANDUM OF DECISION - 2

filing.  *See id.* ¶ 11.  A contingency fee agreement, signed by Trustee and Special

Counsel was attached to the Employment Application as Exhibit A.  Pursuant to that

agreement, Special Counsel was entitled to a contingency fee of one-third should the

matter settle prior to the filing of a complaint, 40% if the matter settled after the filing of

a complaint but before trial, and 45% if the matter settled, or if judgment was obtained,

after the start of trial.  *Id.* at Ex. A.

On November 13, 2025, the Court entered its order approving Special Counsel's

employment.  Doc. No. 66.  The order referenced both §§ 327 and 328, and it authorized

Special Counsel's compensation on a contingency fee basis as set forth in the fee

agreement attached to the Employment Application.  Pursuant to LBR 2014-1, Special

Counsel's employment was effective as of May 18, 2022, the date of the filing of the

Employment Application.

### C.      The Claim and Subsequent Litigation

Debtor was injured in an automobile accident on March 2, 2022.  Doc. No. 97,

¶ 19.  Debtor undertook conservative medical treatment for her injuries for the next 15

months, but as her symptoms worsened, she underwent surgery on June 8, 2023, to

remove damaged spinal disks and fuse together her vertebrae at two places in her cervical

spine.  *Id.* ¶¶ 20–21.  Debtor underwent a second revision surgery on March 5, 2025.  *Id.*

¶ 29.

On February 5, 2024, Special Counsel filed a complaint in the District Court of the

Fourth Judicial District of the State of Idaho (the "State Court Litigation").  *See* Doc. No.

68, Ex. 1.  During the State Court Litigation, Special Counsel answered and propounded

MEMORANDUM OF DECISION - 3

written discovery, and defended Debtor's deposition, Doc. No. 97, ¶¶ 26–27, 30.  Special

Counsel also retained and coordinated with nine expert witnesses, ultimately preparing

and filing two expert reports from the two surgeons that performed Debtor's operations

and an expert report from an economist regarding damages.  *Id.* ¶¶ 31–32.  Special

Counsel also disclosed a pain management expert, a concussion treatment expert, and a

chiropractor.  *Id.* ¶ 33.

In the weeks before trial, Special Counsel subpoenaed witnesses and filed a

pretrial memorandum, witness and exhibit disclosures, proposed jury instructions, and

motions in limine.  *Id.* ¶¶ 39–41.  Opposing counsel was less prepared.  On January 15,

2026, the State Court denied the defendants' motion to continue the trial date and their

motion for leave to file late expert disclosures.  *See* Doc. No. 68, Ex. 1.  Settlement

discussions intensified when defendants were faced with the prospect of proceeding to

trial without experts.  On January 20, 2026, the parties reached a settlement agreement,

subject to Court approval, requiring defendants' insurance company to pay $915,000 to

the bankruptcy estate.  Doc. No. 97, ¶ 43.

### D.      The Compromise Motion

On January 29, 2026, Debtor filed an objection seeking to limit Special Counsel's

and Trustee's fees and to impose conditions on any approval of the settlement.  Doc. No.

68.  At a subsequent hearing, the Court denied the objection without prejudice, explaining

that it was premature since Trustee had not yet sought Court approval of the settlement,

and neither Trustee nor Special Counsel had yet sought compensation.

MEMORANDUM OF DECISION - 4

On April 2, 2026, Trustee filed a Rule 9019 motion to approve the settlement. Doc. No. 99 (the "Compromise Motion").  The Compromise Motion disclosed that defendants' insurance company would pay the bankruptcy estate $915,000, just under the $1,000,000 policy limit.  It also disclosed a subrogation claim held by the Idaho Department of Health and Welfare in the amount of $55,816.44, which the Department agreed to reduce to $31,629.63.  Creditors have filed claims in this case totaling $51,605.81.  Thus, if approved, the Compromise Motion would return a large surplus to Debtor, even after payment of the subrogation claim, creditor claims, and administrative expenses.[2]  Debtor initially objected to the Compromise Motion, but at hearing, clarified that she did not oppose the gross settlement in the amount of $915,000.  Instead, she opposed certain payments being made from those settlement proceeds that would reduce her surplus, including Special Counsel's fees.  The Court entered its order approving the Compromise Motion on May 6, 2026.  Doc. No. 112.

### E.     The Fee Application

The Fee Application was also filed on April 2, 2026.  In response, Debtor filed another objection, Doc. No. 105, which attached numerous exhibits, and later a supplement, Doc. No. 107, which included additional exhibits.  Pursuant to Debtor's request, the Court will consider Debtor's arguments raised in both of her objections and her supplement, Doc. Nos. 68, 105, and 107.

---

[2] Because Debtor is expected to receive a surplus distribution, she has a pecuniary interest in the outcome of the Fee Application, and that interest is sufficient to confer standing in this contested matter. *See e.g., Wellman v. Ziino (In re Wellman)*, 2007 WL 4105275, *1 n.5 (9th Cir. BAP 2007).

MEMORANDUM OF DECISION - 5

**ANALYSIS**

The employment of an attorney for a specified special purpose, other than representing a trustee in conducting the bankruptcy case, is governed by § 327(e).  When so employed, an attorney is generally entitled to compensation for services rendered to the bankruptcy estate.  Under § 328(a), a professional employed on behalf of a bankruptcy estate may seek the bankruptcy court's preapproval of the terms and conditions of employment, including compensation.  If preapproval is granted, the bankruptcy court may later modify the agreed-upon compensation only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); *Owens v. United States Tr. (In re Owens)*, 2014 WL 3867535, at *2 (9th Cir. BAP Aug. 6, 2014); *see also Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) ("There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [ ] § 328.").

Here, Special Counsel's Fee Application and the order of employment invoke § 328.  Thus, Special Counsel was employed pursuant to § 327(e), and his compensation is subject to approval under § 328 and not § 330.

Debtor argues the Court should reduce Special Counsel's compensation because (1) Special Counsel's fees constitute a surcharge of exempt proceeds; (2) Special Counsel is seeking fees for work that is traceable to her property and not property of the

MEMORANDUM OF DECISION - 6

bankruptcy estate; and (3) Special Counsel was only hired to represent the bankruptcy estate but instead held himself out as her attorney.  The Court will also independently consider whether it is appropriate to reduce Special Counsel's compensation pursuant to § 328(a).

## A.  Exemptions

The Code prohibits using exempt funds to pay administrative expenses like Special Counsel's fees.  Bankruptcy courts may not surcharge a debtor's exempt property to satisfy administrative expenses.  *Law v. Siegel*, 571 U.S. 415, 420–22 (2014).  Debtor argues allowance and payment of Special Counsel's fees would result in such a surcharge.  The Court disagrees.  Debtor did not disclose the Claim on her Schedule A/B, as required, and significantly, did not list the Claim as exempt in her Schedule C.  Thus, the Claim does not constitute exempt property, and it is subject to administration by the bankruptcy estate for the benefit of creditors.

## B.  Property of the Estate

Debtor argues that only the portion of the Claim needed to satisfy in full the claims of creditors constitutes estate property, and that because she never personally retained Special Counsel,[3] he is not entitled to any compensation from the Claim.  Both arguments misread § 541.

---

[3] There is confusion on this point.  Special Counsel's Employment Application indicates Special Counsel was retained by Debtor to pursue the Claim prior to the bankruptcy filing.  *See* Employment Application at ¶ 11.  This fact, however, is not material to the outcome of this dispute.

MEMORANDUM OF DECISION - 7

When a bankruptcy petition is filed, an estate is created that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(1).  A debtor's causes of action or legal claims are legal or equitable interests of the debtor in property, within the meaning of § 541(a)(1).  *In re: Porrett*, 564 B.R. 57, 66 (D. Idaho 2016) (citing *McGuire v. United States*, 550 F.3d 903, 914 (9th Cir. 2008) ("A chose in action is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).")).  When Debtor filed her bankruptcy petition, the entire Claim became property of the bankruptcy estate, subject to administration by Trustee for the benefit of creditors.  No portion of the Claim is excluded from the estate based on the amount of claims filed by creditors.  Debtor holds no ownership interest in the Claim, and she is only entitled to a surplus distribution from the estate based upon the availability of funds after all other claims are satisfied.  *See* § 726 (setting forth the priority of distributions in a chapter 7 case).

### C.    Special Counsel's Compensation under § 328(c)

Debtor argues that Special Counsel exceeded his authorized scope of employment by holding himself out as her attorney.  She points out that Special Counsel held himself out as "Attorney for Shelle Allen," Doc. No. 105 at Ex. 10, and communicated to her in a way that made her feel as if she was the client, Doc. No. 105 at Ex. 14.  Construing Debtor's arguments liberally, Debtor appears to argue that Special Counsel was not disinterested throughout this case rendering his compensation subject to denial under § 328(c).

MEMORANDUM OF DECISION - 8

Pursuant to § 328(c), a bankruptcy court may deny compensation and expense reimbursement to a professional "if, at any time during such professional person's employment . . . such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C.§ 328(c).  A disinterested professional is one who can make unbiased decisions, free from personal interest, in matters relating to the bankruptcy estate.  *In re CIC Inv. Corp.*, 192 B.R. 549, 553 (9th Cir. BAP 1996).

The Court has carefully reviewed Debtor's objections and the attached exhibits. Special Counsel did at times represent to Debtor and to third parties that he was her attorney.  This caused confusion on the part of Debtor, which was compounded by the fact that Debtor is not represented by counsel in the bankruptcy case and lacks the benefit of counsel to explain complicated concepts such as what constitutes property of the bankruptcy estate, the role of the chapter 7 trustee, and his attorneys.  This confusion apparently persisted until Special Counsel's January 26, 2026, email to Debtor discussing the settlement and explaining that Special Counsel's client was the Trustee.  Doc. No. 105 at Ex. 1.  In order to deny a professional's compensation under § 328(c), more is required than this confusion.  The record does not demonstrate that Special Counsel's representation of the estate was diminished or impacted by the interest of the Debtor. Special Counsel acted to maximize the value of the Claim for the bankruptcy estate. Reduction of Special Counsel's fees is therefore not required.

MEMORANDUM OF DECISION - 9

**D.      Special Counsel's compensation under § 328(a)**

Special Counsel's contingency fee agreement was preapproved pursuant to § 328(a).  The Court may therefore reduce Special Counsel's compensation only if the terms of his contingency fee agreement "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  A court may not reduce preapproved fees simply because they appear high in hindsight.  *In re Confections By Sandra, Inc.*, 83 B.R. 729, 732 (9th Cir. BAP 1987).  Section 328(a) requires some unanticipated development to justify a reduction.

No such development occurred here.  Recovering on the Claim from defendants' insurer for less than the policy limit was an outcome capable of anticipation when Special Counsel was employed.  The result was favorable.  It was not the kind of unforeseen development that permits adjustment of Special Counsel's fees under § 328(a).

**CONCLUSION**

The Court will deny Debtor's objections.  Special Counsel is allowed fees of $366,000 and reimbursement of $7,598.79 in expenses, for a total award of $373,598.79.  Trustee shall submit a separate order consistent with this decision.

DATED: June 08, 2026

NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 10